Argued December 2; affirmed December 22, 1936

## SERTIC *v.* McCULLOUGH ET AL.
(63 P. (2d) 884)

Department 1.

*David B. Evans,* of Eugene (Immel & Evans, of Eugene, on the brief), for appellants.

*Winsor W. Calkins* and *S. M. Calkins,* both of Eugene (Calkins & Calkins, of Eugene, on the brief), for respondent.

BELT, J. This is an action to recover damages for injuries to person and property resulting from a collision between an automobile truck, driven by the defendant Dahlin, and a horse which plaintiff was leading along the highway. Dahlin was in the employ of the defendant McCullough operating under the firm name of Siuslaw Motor Transport Company. From a judgment in favor of plaintiff for $5,000, on the first cause of action relating to personal injuries, and for $150, on the second cause of action based on loss of property, the defendants appeal.

A brief statement of the facts will suffice to present the legal questions involved in this appeal.

Plaintiff was transporting two large work horses in a truck, following the Siuslaw highway leading westward from Eugene to Florence. He intended to engage in logging operations at a point a few miles west of the scene of the accident. After traveling some distance one of the tires on plaintiff's truck blew out, and after a futile attempt to repair the same, the truck was left alongside the highway. The plaintiff thereupon proceeded on foot leading his horses by halters along the left side of the highway en route to his destination. This highway traverses a mountainous section of the country and the night was dark. It was about 3 o'clock in the morning. Plaintiff had a small two-cell flashlight which aided him in making his way along this curving road. According to his testimony one of the horses was traveling along the gravel shoulder of the oiled macadam highway, the other walking along a few feet to the right on the edge of it. While thus leading the horses, the two-ton auto freight truck came around a slight curve to the left and struck the horse on the right with such force as to cause injuries which resulted in its death a few hours later. The horse, as a consequence of such collision, was thrown on top of the plaintiff thereby seriously injuring him.

The driver of the truck testified that he was traveling on the right side of the sixteen-foot highway and that, after rounding the curve, the lights of the truck came upon the horses about 90 to 100 feet distant. He testified further that the horse on the right was walking along slowly in about the center of the highway. He adds that, in an effort to avoid striking it, he drove as far to the right as he could with safety, considering the 9,600 pound load of freight which the truck carried.

Dahlin claims that he did not see the man with the flashlight. After striking the horse, the defendant did not stop but proceeded on to his destination. In explanation of his failure to stop, Dahlin says that he felt only a "slight impact" when the horse was struck. The plaintiff states that when the collision occurred he heard "a crushing, a great crushing, an awful sound, the way the truck struck the horse."

■ Plaintiff introduced evidence tending to show that the driver of the auto-truck cut in on the turn and came over onto the left side of the highway. The defendants assert that the truck was on the right side of the highway. This issue of fact was properly submitted to the jury. Dahlin says that, after seeing the horses, he slowed down to 18 miles an hour, but that he never applied the brakes.

Defendants assign error upon the refusal to give the following instructions:

"I direct your attention to the statute applicable to the situation involved in this case. The law provides that

'Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway except when the right half is out of repair and for such reason impassable, or when overtaking and passing another vehicle.'

"You are instructed that insofar as the application of this statute is concerned, that the law also is that an animal upon a roadway and every person driving or riding said animal shall be subject to the provisions of this statute. In other words, as a matter of law, the plaintiff leading his two horses is considered a vehicle and subject to the rules of the road the same as an automobile, and it was his duty to proceed on the right hand half of the paved portion of the highway in question.

"I, therefore, instruct you that there is evidence in the case that the plaintiff claims tends to show that he was leading his horses on the left hand side of the pavement for the direction in which he was going which, if it is a fact, is a violation of the statute to which I direct your attention, and is negligence in and of itself, and if said negligence was the proximate cause or a contributing cause to the accident, it will be your duty to return a verdict in favor of the defendants. (Oregon Code, 1935 Supplement, §§ 55-2301, 55-1905)."

In lieu of the above requested instruction the trial court instructed the jury as follows:

"* * * I instruct you that the plaintiff had a perfect right to lead these horses along the highway. It is a reciprocal right. The defendants also had a perfect right to operate their truck upon the highway. But I instruct you that it was the duty of the plaintiff in leading his horses upon the highway to use reasonable care and caution so as to prevent accidents. The plaintiff was required to exercise reasonable care for his own protection and for the protection of the horses, and I instruct you that under the law the plaintiff was not required to lead those horses on the right half of the highway, but he was required to exercise reasonable care in the position in which he had the horses upon the highway so as to prevent the probability of accidents or collision with traffic upon the highway at that time. As to whether or not he exercised reasonable care in this respect is a question of fact for the jury. And too the plaintiff was required to exercise—the care required of the plaintiff must have been commensurate with the danger. In considering that question you take into consideration the fact that the plaintiff was leading these horses around a curve and in the night time and take into consideration the position of the horses upon the highway, and after having considered all of these elements you find that the plaintiff was not exercising that degree of care which an ordinary prudent person would have exercised under the circumstances, and if such fact if it was a fact contributed to

the accident, then I instruct you that the plaintiff can not recover in this case."

Defendants, in urging that plaintiff was guilty of contributory negligence, rely upon section 55-1905, Oregon Code Supplement 1935 (L. 1931, ch. 360, § 5, p. 626), which provides as follows:

"Every person riding a bicycle or an animal upon a roadway and every person driving *or leading any animal* shall be subject to the provisions of this act applicable to the driver of a vehicle, except those provisions of this act which by their very nature can have no application." [Italics ours.]

■■ With reference to this statute, the court instructed the jury as follows:

"I instruct you that the statutes of the state of Oregon require persons leading animals to comply with the provisions of the motor vehicle act applicable to the driver of a vehicle except where those provisions by their very nature could have no application. All vehicles are required to proceed upon the right half of the highway ordinarily and particularly when meeting other vehicles. The rule to be applied to the plaintiff in this particular is that he was bound to observe that degree of care which an ordinary prudent person under similar circumstances and surroundings would have exercised, and when you shall have determined from a consideraton of all the evidence the fact as to plaintiff leading his horses then you shall apply the rule of an ordinary prudent person under similar surroundings and circumstances to the conduct of the plaintiff, and if you find that he was acting as an ordinary prudent person would have acted under similar circumstances then he would not be guilty of contributory negligence. If you find from the evidence in the case as I have already charged you, leading the horses upon the highway and the position in which he had the horses and the manner in which he handled them if he failed to exercise reasonable and ordinary care and if

such fact if it was a fact contributed to the accident then I instruct you that the plaintiff can not recover in this cause."

We approve the instructions given by the court. It is to be borne in mind that plaintiff was a pedestrian. He was not leading horses from another vehicle nor was he riding a horse and leading another one. None of the cases cited by appellants or the respondent are based upon similar fact situations. Nor have we, after diligent search, been able to find any squarely in point. It is a new question in this court.

Certainly if plaintiff had been walking along the highway without leading the horse it would have been his duty to keep on the left side so as to face oncoming traffic. The mere fact that he was leading this horse did not bring him under the rules of the road applicable to vehicles. As a common sense proposition, it seems to us that plaintiff acted as any ordinarily prudent person would have acted under the same circumstances. To have proceeded on the right side of the highway under the existing conditions might well have been considered dangerous. Defendants were not entitled to an instruction that plaintiff was, as a matter of law, guilty of contributory negligence. The standard of the care exercised by the plaintiff was, under all the facts and circumstances of the case, a question for the jury to decide: Huddy on Automobiles (9th Ed.) § 214; Berry on Automobiles (7th Ed.) § 3.571.

In *Raths v. Sherwood*, 195 Minn. 225 (262 N. W. 563), a pedestrian was leading a horse after dark on the right side of the highway and was struck by an automobile going in the same direction. Verdict was had for the plaintiff. Defendant, among other things, claimed on appeal that the decedent was guilty of con-

tributory negligence as a matter of law. The court in upholding the verdict said:

"It was for the jury to say whether the ordinarily prudent person would lead a span of horses after dark as deceased was doing at the place in question *or would lead them upon* the opposite shoulder." [Italics ours.]

In *Fitzsimmons v. Snyder,* 181 Ill. App. 70, it was held not negligence per se for a person to drive loose horses on a highway. It is well known that loose stock travel on all parts of the highway. Applying the reasoning of the court to the facts in the instant case, it would appear not negligence per se to lead horses on a highway. There is certainly more danger involved in loose stock on a highway than from horses being under control as shown in the instant case.

The court, in instructing the jury relative to the duties of the driver of the auto-truck, directed attention to certain statutory rules of the road requiring the driver of a vehicle in any event to keep on the right side of the center line of the highway when upon a curve "where the driver's view along the highway is obstructed within a distance of 500 feet". The court in commenting upon the applicability of the statute further stated "It is conceded here by the parties and shown by the map that the automobile was passing the horses on a curve".

Defendants urge error because it was not conceded that the accident happened on a curve. As before stated Dahlin testified that the horses came into view 90 to 100 feet distant after rounding the curve. There is no dispute about the existence of a high bank on the left side of the highway where the same curved to the left. The purpose and object of the statute is to require drivers of vehicles to keep on the right side of the road in

rounding curves where their vision is obstructed within a distance of 500 feet. Clearly Dahlin had an obstruction of his vision less than 500 feet before striking this horse. Hence he had no right to go on the left side of the highway. The court might have corrected its statement that the accident happened on the curve but we think such error did not substantially affect the rights of the defendants. The objection is somewhat technical and does not warrant a reversal in a case where negligence has been clearly established.

It is also urged as error that plaintiff wilfully injected indemnity insurance into the case to the prejudice of the defendants. We have carefully considered that phase of the case and find no merit in such contention. The substantial verdict rendered might well be more attributed to the fact that after Dahlin struck the horse he rendered no assistance but sped on in the darkness of the night.

Finding no reversible error it follows that the judgment is affirmed.

ROSSMAN, KELLY and BAILEY, JJ., concur.